IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE M. and VIRGINIA M., individually )
and as Parent and Next Friend of )
NICOLE M., )
    Plaintiffs, )
                                          )
         v. )         09 C 3010
                                          )
BOARD OF EDUCATION OF THE )
CITY OF CHICAGO, DISTRICT 299, )
    Defendant. )

## MEMORANDUM AND ORDER

This case turns on a dispute about attorneys' fees incurred in connection with a special education due process hearing under the Individuals with Disabilities Education Act ("IDEA"). Defendant Board of Education of the City of Chicago, District 299, contends that plaintiff Nicole M. and her mother, Virginia M., were: (1) not prevailing parties as to all claims, so their fees should be reduced; (2) their requested fees are excessive; and (3) the plaintiffs are not entitled to any fees incurred after the Board provided an offer of judgment because the plaintiffs did not subsequently obtain more favorable relief. The plaintiffs' motion for summary judgment is before the court. For the following reasons, the plaintiffs' motion is granted in its entirety.

## Background

The following facts are undisputed unless otherwise noted.

*Parties*

The plaintiffs are Nicole M., an 18 year-old woman who is in her senior year of high school, and her mother and next friend, Virginia M. Nicole's school district of residence is Chicago Public School District No. 299. Following a three day due process hearing, an Independent Hearing Officer issued an

order which determined that CPS had denied Nicole a free and appropriate public education for more than two years, and ordered that CPS provide a private therapeutic day school placement and additional services and supports through the 2009-10 school year.

Defendant Board of Education of the City of Chicago, District 299, is the Local Education Agency as defined in 20 U.S.C. § 1402(15).

*Hancock College Preparatory High School*

During the 2008-2009 school year, Nicole was an 18 year-old senior at Hancock College Preparatory High School, part of the Chicago Public Schools. In November of 2001, when she was in the 5th grade, she was found to be eligible for special education services based on the category of learning disability, with weaknesses noted in word decoding, spelling and comprehension.[1]

In October of 2006, Nicole enrolled in Hancock High School. CPS staff were aware that Nicole had previously been enrolled with an Individual Education Plan ("IEP"), and that a special evaluation was pending. Nevertheless, despite numerous complaints to Hancock staff from Nicole and her mother, CPS staff did not prepare an IEP for Nicole until December of 2007. During Nicole's junior year, she was absent 65.5 days.

In the fall of 2008, Plaintiff Virginia M. obtained an independent educational evaluation for Nicole by a clinical psychologist. The Board challenges the psychologist's findings but admits that the hearing officer found that Nicole's intelligence scores were in the average range, but her academic achievement scores showed little or no gains from the previous year. On September 15, 2008,

---

[1] The Board seeks to strike a number of Nicole's statements of fact, contending that they are not supported by citations to the record. To the extent that Nicole cited to specific portions of the Board's answer to the amended complaint, Nicole's facts are properly supported and are thus properly before the court.

Virginia submitted a pro-se request for a due process hearing. The following month, Nicole and Virginia retained counsel, who prepared an amended due process complaint seeking relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.* The amended due process complaint raised the following issues:

1. Did the District create and implement an Individual Education Plan ("IEP") that provided a free appropriate public education ("FAPE") for Nicole during the 2006-2007, 2007-2008 and 2008-2009 school years so she could make adequate educational progress?

2. Were appropriate, adequate and timely assessments conducted to address Nicole's needs?

3. Were appropriate, adequate and timely related services provided to Nicole?

4. Was an adequate, appropriate and timely transition plan developed and implemented?
5. Should the district be ordered to pay for independent evaluations to determine if Nicole has potential unassessed disabilities?

6. Should the District pay to place Nicole at Acacia Academy, a private therapeutic day school, for the remainder of the 2008-2009 school year and for an additional compensatory fifth school year of high school without regard to how many credits the District has already awarded toward graduation?

7. Should the District provide additional tutoring and social work services during Nicole's time at Acacia Academy and then for an additional year (2010-2011) as compensatory services?

*Settlement Offers Prior to the Due Process Hearing*

Prior to the due process hearing, counsel for the District offered the following terms for settlement: (1) the District offered to revise Nicole's IEP by: (a) increasing the amount of special education instruction to between 600 and 800 minutes per week; and (b) adding social work or psychological services of 60 minutes per week; (2) the District offered to fund an independent educational evaluation to assess Nicole's needs; and (3) the District offered to conduct testing in the

areas of auditory processing and attention and organizational needs. The District also offered to provide one of the following two options as compensatory services, and to implement the chosen option as part of the IEP Revision: (1) to attempt to obtain placement at Acacia School, a separate day school, through June 2010, and if Acacia is either unwilling or unable to accept Nicole, to identify a placement suitable for a student with learning disabilities; or (2) two hours tutoring per week after regular school hours by a certified special education teacher with training in whichever reading remediation methodology is used during the regular school day, for the 2008-2009 and 2009-2010 school years and an additional 30 minutes per week of social work services for 2008-2009 and 2009-2010 school years.

The plaintiffs rejected this offer. The District then offered the following additional terms for settlement in addition to the prior terms: (1) testing in the area of assistive technology; and (2) tutoring of up to twenty hours during the 2010-2011 school year. The Board also clarified that its offer of settlement did not include attorneys' fees. The plaintiffs rejected this offer.

*The Due Process Hearing*

An independent hearing officer ("IHO") appointed by the Illinois State Board of Education held a due process hearing. Following the hearing the IHO issued a decision and order finding that CPS denied Nicole a free and appropriate public education during the previous three years and stating that:

1. CPS did not create and implement an IEP for the Student that provided FAPE during the 2006- 2007, 2007-2008 and 2008-2009 School Years so that the Student could make adequate educational progress.

2. Adequate and appropriate assessments were not conducted to address the Student's needs.

3. Appropriate and adequate related services were never provided to the student to assist her in benefitting from her education.

4. The Student had no adequate and appropriate transition plan.

5. The District should not be ordered to pay for independent evaluations to determine Student's potential unassessed disabilities unless the Acacia Academy determines that such evaluations and testing may be necessary for them to appropriately develop a program and educate the Student, in which event the District shall pay for it.

6. The District should pay to place the Student at Acacia Academy for the remainder of the 2008-2009 school year including any ESY services offered at Acacia Academy in summer 2009 and for an additional compensatory fifth year of high school for the 2009-2010 school year without regard to possible graduation from CPS because of credits accrued to date.

7. The District should provide additional tutoring and social work during her time at Acacia Academy, from March 2009 through June 2010 as compensatory services.

Due Process Hearing Order, Exhibit A to Amended Complaint at 16.

The IHO then ordered that:

1. The Student shall be placed at Acacia Academy beginning the week of March 2, 2009 and shall receive education and related services there through Summer 2009 and through the 2009-2010 School Year to June 2010.

2. The District upon presentation of appropriate invoices shall make all payments on behalf of the Student directly to Acacia Academy, for the aforesaid time period, pursuant to a contract entered into after placement approval by the ISBE, which approval shall not be delayed beyond 10 days after proper application by the District.

3. The District is to be reimbursed as set forth in the School Code by ISBE for any payments made to Acacia Academy on the Student's behalf.

4. The District is to provide transportation to the Student to and from Acacia Academy for the period previously set forth, or if both Parties agree, the District shall reimburse the Mother at an agreed upon rate for providing transportation for the Student.

> 5. The Student is required to attend Acacia Academy for the entire day each day it is in session. All absences shall be verified by medical persons or shall be excused if Acacia Academy determines the absence had a valid cause. If the Student misses more than 2 days, per month without a valid excuse, Acacia Academy shall notify CPS and the CPS obligations under this order are removed upon such notification.
>
> 6. The District shall convene an IEP meeting to place the Student at Acacia and to modify her IEP in accordance with the findings of this order. Further modifications shall be made at a reconvened meeting after any testing that Acacia Academy does or deems appropriate to be done and with input from Acacia Academy staff who shall be invited to all IEP meetings.
>
> 7. The Student is to receive additional weekly social services of 60 minutes per week and tutoring for 120 minutes per week to be arranged between Acacia, Student, Mother and the District. It may be contracted for at Acacia Academy or provided at the Student's home by certified District staff.

*Id*. at 16-17.

*Acacia Academy*

In March of 2009, Nicole began attending Acacia Academy, a private therapeutic day school in LaGrange, Illinois, at CPS's expense. Acacia staff determined that the following special evaluations were appropriate for Nicole: psychological testing, academic testing, occupational therapy assessment, speech/language assessment and assistive technology assessment.[2]

*Fees*

On March 23, 2009, the plaintiffs submitted an interim claim for attorney fees to CPS. The total amount claimed for representation in the due process hearing through that date was $53,852.75.

---

[2] The Board contends that this fact, as well as certain other facts in the plaintiffs' Rule 56.1 statement, are irrelevant and asks that they be stricken, but does not otherwise challenge the plaintiffs' recitation of the facts. The court is tasked with determining what is relevant, so objections to facts based on relevancy are improper. *Keefe v. Mega Enterprises, Inc.*, No. 02 CV 5156, 2005 WL 693795, at *1 (N.D. Ill Mar. 23, 2005) (objecting to statements of facts on relevance grounds is inappropriate). Accordingly, the Board's objections based on relevancy are overruled.

The plaintiffs contend that they incurred additional fees after that date and will incur additional fees in the future relating to the IHO's decision and Nicole's future needs

Acacia staff has requested that CPS, in accordance with the IHO's order, convene an IEP meeting to consider the additional evaluations. Plaintiffs filed a complaint with the Illinois State Board of Education regarding CPS's failure to convene an IEP meeting in accordance with the IHO's order. The defendant has not paid any of the attorneys' fees incurred by the plaintiffs in the due process proceeding (Complaint ¶16; Answer ¶16 admits).

The following range of hourly rates prevail in the Chicago metropolitan area for attorneys representing parents in special education matters:

- $330-385 an hour for attorneys with 20 or more years of experience;
- $295-330 an hour for attorneys with 11 to 19 years of experience;
- $270-295 an hour for attorneys with 6 to 10 years of experience;
- $240-270 an hour for attorneys with 3 to 5 years of experience;
- $185 an hour for attorneys with 1 to 2 years of experience; and
- $85-115 an hour for law clerks and paralegals[3]

Plaintiffs' counsel, Michael A. O'Connor, has been licensed to practice law since 1970, and has extensive litigation experience. Peter Godina has more than 4 years experience as a legal assistant, including work as a legal assistant at the firm of Mauk & O'Connor, LLP for more than two

---

[3] The Board objected to the enumerated fees, which are supported by an affidavit prepared by the plaintiffs' counsel, stating that the fees are "not supported by the record as the affidavit of Michael A. O'Connor does not refer to other affidavits from other attorneys in the Chicago metropolitan area representing parents in special education matters and their hourly rates, and therefore violates Local Rule 56.1." The affidavit of counsel tracks the fees set forth in the Rule 56.1 statement of facts. There is no numerosity requirement for billing rates, so if the Board disagreed with the billing rates provided by the plaintiffs, it was obligated to point to evidence supporting its position. Having not done so, the objection to the plaintiffs' billing rates is overruled.

years. Plaintiffs' co-counsel, Nelly Aguilar, has been licensed to practice law since 2008. She is a 2007 graduate of DePaul University College of Law and upon graduation, she founded a special education law clinic at DePaul.

### Standard for A Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id*.

### Discussion

The Board asserts that the plaintiffs are not prevailing parties because they did not obtain all of the relief they requested at the due process hearing. Hence, the Board concludes that the plaintiffs' fees should be reduced since their degree of success was minimal. In addition, the Board contends that the plaintiffs' attorneys' fees are not reasonable in relation to the result obtained because the Board offered to settle this matter prior to the due process hearing. According to the Board, because the plaintiffs ended up in essentially the same place they would have had they accepted the Board's settlement offer, they are not entitled to any fees incurred following the offer of settlement.

Under the IDEA, the parents of a child with a disability may be awarded reasonable attorneys' fees if they are the prevailing parties in an administrative proceeding. 20 U.S.C. § 1415(i)(3)(B). A party "prevails" when she is granted relief by a court, usually via a judgment on the merits, a consent decree, or a similar judicially sanctioned change in the parties' legal relationship. *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ("A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"). In an IDEA case, a plaintiff is a prevailing party if she "succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Given the results at the administrative level, there can be no serious question about the plaintiffs' status as prevailing parties. The Board, however, contends that they achieved only modest success at the due process hearing because they received the relief the Board offered in a settlement offer made prior to the hearing. This argument blends into the Board's second argument – that the plaintiffs' attorneys' fees are excessive because they did not achieve anything beyond what was offered via settlement prior the hearing.

Where a party has achieved only a technical or minimal victory, she may not be entitled to attorneys' fees. *See, e.g., Evanston Community Consolidated School Dist. No. 65 v. Michael M.*, 356 F.3d 798, 805 (7th Cir. 2004). The court thus turns to the settlement offer and the IHO's decision to determine if the plaintiffs are entitled to fees as prevailing parties.

The plaintiffs' main argument on this point is that the IHO ordered the Board to provide Nicole with both placement at Acacia *and* compensatory education services in the form of after-

school tutoring and social work services. According to the plaintiffs, this was a major victory because the Board offered Nicole and her mother a choice between these two options.

The court agrees with the plaintiffs that placement at Acacia plus one hour/week social services and two hours/week of tutoring is not comparable to a choice between placement at Acacia *or* 30 minutes/week social services and two hours/week of tutoring. It is true that the IHO did not order testing in auditory processing, attention/organizational needs, and assistive technology, which were part of the Board's settlement offer. However, when Nicole began attending Acacia in March of 2009, Acacia staff determined that she needed psychological testing, academic testing, occupational therapy assessment, speech/language assessment and assistive technology assessment. Thus, the placement at Acacia essentially encompassed the testing and Nicole did not "lose" on this issue by not having it be included as a separate line item in the IHO's order. Moreover, nothing in the record convinces the court that the other major difference between the settlement offer and the IHO's order – placement at Acacia for the rest of Nicole's time in high school plus 20 hours of tutoring during the 2010/2011 school year – is comparable to placement at Acacia for the rest of Nicole's time in high school plus one hour/week social services and two hours/week of tutoring during that time.

In short, the court rejects the Board's position that the IHO's award was no greater than the Board's settlement offer. Indeed, the court finds that the Board's position is not itself substantially justified. The court does not appreciate the misleading nature of the Board's chart (on page 3 of its response to the plaintiffs' motion for summary judgment) which suggests that the IHO's order of Acacia placement *and* one hour/week social services plus two hours/week tutoring is the same as Acacia placement *or* 30 minutes/week social services plus two hours/week tutoring. This means that the plaintiffs are entitled to reasonable fees as prevailing parties and that fees will not be cut off as of

the time of the settlement offer. *See* 20 U.S.C. § 1415(i)(3)(D) (a prevailing party is not entitled to fees and costs for services performed after a written offer of settlement is made if (1) the offer is made more than ten days before the administrative hearing; (2) the offer is not accepted within ten days; and (3) the relief obtained in the administrative hearing is not more favorable than the offer).

This brings the court to the reasonableness of the fees requested by the plaintiffs. The Board contends that the plaintiffs' attorneys improperly double-billed by having multiple attorneys perform the same work, and by repeating the same work before and after the Board's settlement offer. The Board also asserts that the time spent preparing the complaint should be cut back because the plaintiffs' counsel is experienced in filing due process complaints against the Chicago Public Schools. Finally, the Board challenges the plaintiffs' photocopying charges in the amount of $105.40.

The court has carefully reviewed the documentation supporting the rates of plaintiffs' attorneys as well as the billing statements and other materials in the record relating to the requested fees. It finds that the hourly rates are appropriate and that the work performed was all reasonable and necessary. First, there is no per se rule against having multiple attorneys work on a case; indeed, the practice of distributing work among attorneys of differing seniority can often help the bottom line, as appears to be the case here. Second, the fact that the plaintiffs' attorneys spent time preparing for the due process hearing before and after the Board's settlement offer is irrelevant. They are not required to complete all of their preparations prior to the moment (which is necessarily completely out of the plaintiffs' control) that the Board might decide to make a settlement offer.

Third, the contention that the plaintiffs were required to use a boilerplate complaint, as opposed to a complaint based on the specific facts of this case, is meritless. Fourth, the plaintiffs submitted a chart (Exhibit C to their response to the Board's statement of additional facts, Docket No.

32-2 at p. 6) that explains the copying costs. Accordingly, the plaintiffs are awarded the full amount of attorneys' fees sought in connection with this matter.

## **Conclusion**

The plaintiffs' motion for summary judgment [#29] is granted in its entirety. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.


DATE:   January 14, 2010                          _____
                                                  Blanche M. Manning
                                                  United States District Court Judge